UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| UNITED STATES | * |
| | * |
| v. | *   Criminal Action No. 1:21-cr-10054-IT |
| | * |
| MICHAEL WARNER, | * |
| | * |
| Defendant. | * |

MEMORANDUM & ORDER

May 4, 2022

TALWANI, D.J.

Pending before the court is Defendant Michael Warner's Motion to Suppress Evidence [Doc. No. 44]. For the following reasons, the motion is DENIED.

## I. Background

On August 13, 2020, law enforcement agents with the Drug Enforcement Agency ("DEA") established surveillance of 620 Haverhill Street (the "property") in Lawrence, Massachusetts. Boc Aff. ¶ 8 [Doc. No. 44-3]. The front and northside of the property is on Haverhill Street, the eastside is on Middlebury Street, and the rear and southside is on Magnolia Street. Id.; Map of Area [Doc. No. 46-1]. On two separate occasions during that day, DEA investigators stopped three individuals after they made brief visits to the rear of the property. Boc Aff. ¶ 8 [Doc. No. 44-3]. These three individuals independently reported that they had purchased fentanyl at the property. Id. Specifically, the individuals all stated that they had contacted an individual known only as "Raldy," either through a phone call or Facebook. Id. After placing an order for fentanyl, they were directed to 1 Magnolia Street in Lawrence. Id. There is no residence at 1 Magnolia Street; rather, the address 1 Magnolia Street is the back yard of the 620 Haverhill Street property. Id. Each individual described meeting someone across a chain link fence

enclosing the property. Id. Each described handing money to that person through the fence in exchange for fentanyl. Id. In total, investigators seized approximately four grams of suspected fentanyl from these three individuals. Id.

At 7:05 p.m. the same day, after these three interactions, the DEA investigators observed a silver Ford Five Hundred, bearing New Hampshire Registration 4718752, traveling eastbound on Haverhill Street. Id. at ¶ 9; Investigation Report ¶ 2 [Doc. No. 44-2]. The vehicle was registered to Jennifer Fisher of Nashua, New Hampshire. Investigation Report ¶ 2 [Doc. No. 44-2]. The driver, later identified as Warner, turned onto Middlebury Street, stopped the car near Magnolia Street, and got out of the car. Id.; Boc Aff. ¶ 9 [Doc. No. 44-3]. Due to the agents' vantage points, they were unable to see whether Warner approached the fence in the back yard of the property. Boc Aff. ¶ 9 [Doc. No. 44-3]. The agents then observed Warner return to his car and drive back in the direction he came from. Investigation Report ¶ 2 [Doc. No. 44-2].

At approximately 7:15 p.m., Special Agent Matthew Boc observed Warner travel westbound on Haverhill Street and turn into a McDonalds in Methuen, Massachusetts, make a purchase at the drive-through window, and then continue westbound on Haverhill Street. Id. at ¶ 3. Law enforcement initiated mobile surveillance of Warner as he traveled towards I-93, and Special Agent Jeffrey Commander observed Warner take the on-ramp for I-93 southbound. Id. at ¶¶ 3-4.

At approximately 07:27 p.m., Special Agent Boc affected a traffic stop of Warner's car just south of exit 38 on I-93. Id. at ¶ 5. In his affidavit, Boc states that DEA investigators stopped Warner for speeding but that no citation was given. Boc Aff. ¶ 9 [Doc. No. 44-3]. However, Boc's investigation report makes no reference to a speeding violation.

During the stop, Boc asked Warner where he was coming from, and Warner responded that he had been visiting his grandmother at 3 Haverhill Street in Lawrence. Investigation Report ¶ 5 [Doc. No. 44-2]. At no time did agents observe Warner in the area of 3 Haverhill Street, and in fact, there is no residence there. Id.; Boc Aff. ¶ 9 [Doc. No. 44-3].

Boc asked Warner for his driver's license and registration. Investigation Report ¶ 6 [Doc. No. 44-2]. Warner removed a Massachusetts driver's license from his wallet belonging to Christopher Ray. Id. When Warner opened the glove compartment of the vehicle, Boc observed a metered dose inhaler of Narcan in plain view. Id. Warner then explained that neither the vehicle nor the driver's license was his. Id. Warner stated that he had found the driver's license several months prior and kept it, but he adamantly denied keeping the license for the purpose of identifying himself as Ray. Id. Warner then gave his real name to Boc, and Boc determined that Warner was on parole and had a suspended driver's license from New Hampshire. Id.

Boc informed Warner that he had observed Warner in the area of a known drug house and suspected that Warner had purchased narcotics there. Id. at ¶ 7. Boc noticed that Warner appeared very nervous and was sweating. Id. Following some discussion about cooperating with agents, Warner admitted that he had picked up seventy grams of fentanyl for $1,000 from 620 Haverhill Street. Id. Warner then removed a clear plastic bag from the center console of the car in view of agents Boc and Commander. Id. The bag contained several other bags containing suspected fentanyl. Id. The drugs were later tested and confirmed to be 70.411 grams of a substance containing fentanyl. Boc Aff. ¶ 9 [Doc. No. 44-3]. Warner was released, and his vehicle was towed due to his suspended license. Id.

Warner was subsequently arrested on January 13, 2021. He was indicted by a grand jury on February 11, 2021, on one count of possession with intent to distribute forty grams or more of fentanyl. Indictment [Doc. No. 9].

**II.    Discussion**

Warner moves to suppress the evidence derived from the stop, including his statements to law enforcement and the narcotics seized from his car, on the ground that the stop was not supported by probable cause that Warner was then or had been engaged in criminal activity. The government counters that the stop was a valid investigatory stop where law enforcement had reasonable, articulable suspicion to believe that Warner had committed a crime. The government also argues that the stop was independently valid where Warner was stopped for speeding.

    A.    *Investigatory Stop*

The Fourth Amendment to the United States Constitution protects "[t]he right of the people to be secure in their persons, houses, papers, and effects, against unreasonable searches and seizures." U.S. Const. amend. IV. Searches conducted without a warrant are "per se unreasonable under the Fourth Amendment—subject only to a few specifically established and well-delineated exceptions." Schneckloth v. Bustamonte, 412 U.S. 218, 219 (1973) (quoting Katz v. United States, 389 U.S. 347, 357 (1967)). One such exception is that the Fourth Amendment permits an officer to initiate a brief investigative traffic stop when he has "a particularized and objective basis for suspecting the particular person stopped of criminal activity." United States v. Cortez, 449 U.S. 411, 417-418 (1981); see also Terry v. Ohio, 392 U.S. 1, 21-22 (1968). "Although a mere 'hunch' does not create reasonable suspicion, the level of suspicion the standard requires is considerably less than proof of wrongdoing by a

4

preponderance of the evidence, and obviously less than is necessary for probable cause." Prado Navarette v. California, 572 U.S. 393, 397 (2014) (quotation altered).

In this case, law enforcement agents had a reasonable suspicion that Warner had engaged in criminal activity. Law enforcement had been surveilling the area of 620 Haverhill Street, where three people reported that they had purchased fentanyl from behind the property and where law enforcement had seized suspected fentanyl from those individuals. Law enforcement then saw Warner arrive in a car with out-of-state license plates, park in the area of the drug distribution operation, briefly get out of his car in that area, and then drive off in the direction he came from. Although any one of these facts would not necessarily support reasonable suspicion, see, e.g., Illinois v. Wardlow, 528 U.S. 119, 124 (2000), "a fact that is innocuous in itself may in combination with other innocuous facts take on added significance," United States v. Ruidíaz, 529 F.3d 25, 30 (1st Cir. 2008). Based on the totality of the circumstances, law enforcement had reasonable suspicion that Warner was involved in a drug transaction at the inception of the investigatory stop.

After initiating the stop, Boc asked Warner where he was coming from, and Warner gave an answer inconsistent with law enforcement's information about the vehicle's earlier whereabouts. This supported Boc's reasonable suspicion and pursuit of further questioning. See, e.g., United States v. Ramdihall, 859 F.3d 80, 92 (1st Cir. 2017) (relying in part on odd explanation of travel plans to support reasonable suspicion). After informing Warner that he had been observed in the area of a known drug distribution area, Boc noticed that Warner appeared nervous and was sweating. Taking all these facts together, Warner's extension of the investigatory stop was not unreasonable. See, e.g., United States v. Dion, 859 F.3d 114, 126-27 (1st Cir. 2017) (pointing to defendant's nervousness, odd travel route, and stated purpose of

travel to support reasonable suspicion determination and collecting cases doing the same). Accordingly, there is no basis for the suppression of Warner's statements or the narcotics seized from his car.

    B.    *Traffic Stop*

Where the court concludes that law enforcement had reasonable suspicion to conduct the investigatory stop, it need not consider whether the stop was independently valid as a traffic stop.

### III.    Conclusion

For the forgoing reasons, Warner's <u>Motion to Suppress Evidence</u> [Doc. No. 44] is DENIED.

IT IS SO ORDERED.

May 4, 2022                                                  /s/ Indira Talwani
                                                                      United States District Judge